IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-00915-JLK-SKC

FIRST MERCURY INSURANCE COMPANY,

    Plaintiff,

v.

WONDERLAND HOMES d/b/a CDL HOMES, INC.,

    Defendant.

---

## ORDER RE: DEFENDANT'S STATEMENT OF ATTORNEY FEES

On December 11, 2020, Defendant Wonderland Homes filed its Motion to Compel Discovery [#74],[1] seeking supplemental responses from Plaintiff First Mercury Insurance Company to 24 written discovery requests. After a hearing, Senior District Judge Kane granted the motion to compel, and directed Wonderland to file a statement establishing the reasonable expenses, including attorney fees and costs, it incurred in prosecuting the motion to compel. [#86.]

Wonderland filed its Statement Concerning Attorney Fees ("Fee Statement") on February 1, 2021, seeking fees totaling $88,895.00. [#88.] The Fee Statement includes the Affidavit of Christopher R. Mosley, lead counsel of record. [#88-1.] First

---

[1] The Court uses "[#__]" to refer to docket entries in CM/ECF.

Mercury filed a response opposing the Fee Statement, and Wonderland filed a reply in support of it. [#89 and #94, respectively.] Judge Kane referred the Fee Statement to the magistrate judge for a decision on the appropriate amount of the fee award. [#90; #91.] Having reviewed the Fee Statement and the related filings, applicable case law, and entries from the docket, no hearing is necessary. For the reasons explained below, the Court orders a fee award of $52,987.50.

## A. BACKGROUND

This case involves an insurance coverage dispute. First Mercury seeks a declaration that it had no duty to defend or indemnify its insured, Wonderland, in a lawsuit filed in Colorado state court. In the underlying lawsuit, a homeowners association sued Wonderland for residential construction defects. Wonderland tendered a claim for coverage under insurance policies issued to it by First Mercury, requesting that First Mercury defend and indemnify it with respect to that case. That case eventually settled. Wonderland now claims it is entitled to indemnification from First Mercury for a portion of the amount Wonderland paid to settle the case.

Regarding the Fee Statement, Wonderland breaks the fees into three categories of work—conferral work, drafting work, and the hearing—as follows:

| Time Period | General Type of Work | Combined Number of Hours for All Attorneys | Combined Attorney Fee Expense for All Attorneys |
|---|---|---|---|
| November 11, 2020 to December 1, 2020 | Confer with First Mercury Under D.C. COLO. LCivR 7.1(a), including conferral letter. | 71.50 | $38,297.50 |
| December 2, 2020 to January 12, 2021 | Create Motion to Compel and its supporting Reply Brief. | 72.25 | $40,250.00 |
| January 13, 2021 to January 26, 2021 | Prepare for and participate in January 26, 2021 hearing. | 15.50 | $10,347.50 |
| **TOTALS FOR ATTORNEY HOURS AND FEES SOUGHT** | | **159.25** | **$88,895.00** |

First Mercury does not oppose the $10,347.50 sought for the hearing on the motion to compel; only the first two categories of work are at issue.

**1.      Conferral Work**

The conferral work was performed by three attorneys with their respective allocations of time as follows:

*Conferral Work*

| Attorney | Total Time Allocation (hours) | Percentage Allocation |
|---|---|---|
| Brooke Yates | 34.5 | 48% |
| Christopher Mosley | 17 | 24% |
| Stephen Robin | 20 | 28% |
| **TOTAL** | **71.50** | **100%** |

In relevant part, Wonderland explains the conferral work in this way:

Wonderland was required to undertake the Conferral Work under D.C.COLO.LCivR 7.1(a) and Fed.R.Civ.P. 37(a)(1). First Mercury's November 11, 2020 written discovery responses were consistently and repeatedly improper and inadequate. To address the issues with First Mercury's responses in a manner consistent with the spirit and letter of Local Rule 7.1(a) and F.R.C.P. 37(a)(1), Wonderland was required to address each discovery request individually and, within each discovery request, each objection raised by First Mercury.

[#88, p.2.] Wonderland claims the end-product—a single-spaced, 27-page conferral letter [#74-7]—was necessary to "adequately confer about this vast array of First Mercury deficiencies . . .." [*Id.*, p.3.] The conferral work also includes limited telephone and email communications between counsel after sending the conferral letter and before filing the motion to compel.

## 2.    Drafting Work

The drafting work was performed by four attorneys with their respective allocations of time as follows:

*Drafting Work*

| Attorney | Total Time Allocation (hours) | Percentage Allocation |
|---|---|---|
| Brooke Yates | 13 | 18% |
| Christopher Mosley | 6.25 | 9% |
| Stephen Robin | 2.25 | 3% |
| Michael Carroll | 50.75 | 70% |
| **TOTAL** | **72.25** | **100%** |

Wonderland argues the motion to compel was necessitated by First Mercury's failure to substantively respond to conferral efforts. It points out the motion to compel addressed 24 written discovery requests individually, among other things. The drafting work also includes preparation of the reply in support of the motion to

compel. The motion to compel is 25-pages, double spaced, with 175 total pages when considering the exhibits and proposed order attached to the motion. Judge Kane granted the motion to compel as to 23 of the 24 written discovery requests.

## B. LEGAL PRINCIPLES

### B.     The Lodestar Amount

Once a party has established their entitlement to fees as the prevailing party, the district court must determine a reasonable fee. *Beard v. Teska*, 31 F.3d 942, 955 (10th Cir. 1994), *abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001). To determine a reasonable fee award, the court generally begins by calculating the "lodestar amount." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This amount includes the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Id.* at 433. The party seeking the fee award must demonstrate the award is reasonable. *See Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). "The district court has a corresponding obligation to exclude hours not reasonably expended from the calculation." *Id.* (quoting *Hensley*, 461 U.S. at 437) (internal quotation marks omitted).

When requesting a fee award, the attorney must exercise the same "billing judgment" as would be proper in setting fees for a paying client. *Hensley*, 461 U.S. at 434. "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended." *Case v. Unified Sch. Dist. No. 223,* 157 F.3d 1243,

1250 (10th Cir. 1998) (citing *Ramos v. Lamm*, 713 F.2d 546, 553 (10th Cir. 1983), *overruled on other grounds by Penn. v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711 (1987)). Hours that are "excessive, redundant, or otherwise unnecessary" should be excluded from a fee request. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1204 (10th Cir. 1986) (citation omitted). "A court should also consider whether the amount of time spent on a particular task appears reasonable in light of the complexity of the case, the strategies pursued, and the responses necessitated by an opponent's maneuvering." *Villanueva v. Acct. Discovery Sys., LLC*, 77 F. Supp.3d 1058, 1082 (D. Colo. 2015) (citing *Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1257 (10th Cir. 2005)).

Additionally, tasks that are easily delegable to non-professionals or less experienced associates should not be billed at a higher hourly rate. *N.M. Citizens for Clean Air & Water v. Espanola Mercantile Co.*, 72 F.3d 830, 835 (10th Cir. 1996); *see also Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir. 1983) ("Nor do we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable … Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates."); *Xtreme Coil Drilling Corp. v. Encana Oil & Gas (USA), Inc.*, 958 F. Supp.2d 1238, 1258-59 (D. Colo. 2013) (reducing partner fees by 10% after finding there was an "over-reliance on partners, rather than lower-cost associates, to prepare many aspects of the case" that was "not justified by the complexity of the case").

## C. ANALYSIS

Even Wonderland concedes the amount of fees it seeks are high for a discovery motion. [#88, p.4 ("Wonderland recognizes the amount of the fees are high for a discovery motion.")] But it claims the high fees were "driven by the number of discovery requests, objections and issues created by First Mercury's discovery responses." [*Id.*] It further claims it "endeavored to keeps (*sic*) its fees as low as possible in light of the number of issues, but was required to address each issue in order to comply fairly with its conferral and motion obligations." [*Id.*]

Despite its endeavor to keep its fees as low as possible, the Court observes the total hours spent on the conferral work nearly equals the total hours spent on the drafting work—71.50 hours and 72.25 hours, respectively. This rough equivalency of time raises a question over the billing judgment exercised by Wonderland before submitting its Fee Statement. Indeed, the Fee Statement reflects no write-offs or reductions whatsoever.

### 1.      Reasonable Time Expended

The Court first determines the number of hours reasonably expended by counsel. The burden of proof lies with the movant. *Hensley*, 461 U.S. at 433. The movant should submit "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250 (citing *Ramos*, 713 F.2d at 553). The Court looks to those hours necessary under the

circumstances and approaches this reasonableness inquiry "'much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients . . . .'" *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Ramos*, 713 F.2d at 555). And while counsel's practice of block billing in this matter is frowned on and renders this task more difficult, the Tenth Circuit has "never mandated a reduction or a denial of a fee request based on block billing." *BP Pipelines (N. Am.) Inc. v. C.D. Brown Const., Inc.*, 473 F. App'x. 818, 835 (10th Cir. 2012).

Wonderland suggests the level of detail in its conferral letter was required under the circumstances and supports finding the conferral time was reasonable. But this Court does not find the level of detail in the conferral letter, including its 14 in-circuit case citations or 27 single-spaced pages, makes the 71.50 hours for the conferral work a reasonable expenditure of time. And while Wonderland argues not awarding the full amount for the conferral letter would "foster less than vigorous, good faith conferral efforts in this District" [#94, p.4], the Court disagrees. In this District, counsel is *required* by the Local Rules of Practice (and most judicial officers' practice standards) to confer deliberately and in good faith. The issue when seeking an award of fees is the billing judgment exercised by counsel. These principles are not mutually exclusive. It is possible for counsel to confer thoroughly (even vigorously) and in good faith while also exercising billing judgment when seeking an award of fees.

Moreover, counsels' block billing does nothing to assist the Court in determining what amount of time spent was reasonable. *Case*, 157 F.3d at 1250 ("A district court is justified in reducing the reasonable number of hours if the attorney's time records are 'sloppy and imprecise' and fail to document adequately how he or she utilized large blocks of time.") Nevertheless, the Court reduces the overall time on the conferral work deducting for work that appears either redundant of other work, excessive, or otherwise unnecessary, which includes: (1) Robin 11/16/20 entry of 3.75 hours; (2) Robin 11/17/20 entry of 0.5 hours; (3) Yates 11/18/20 entry of 2.50 hours; (4) Yates 11/23/20 entry of 3.25 hours; (5) Yates 11/27/20 entry of 11.50 hours, reduced by half; (6) Mosley 11/28/20 entry of 3.75 hours; (7) Mosley 11/29/20 entry of 5.50 hours; (8) Robin 11/30/20 entry of 4.50, reduced by half; and (10) Yates 11/30/20 entry of 2.25 hours. *Mares*, 801 F.2d at 1204 (hours that are excessive, redundant, or otherwise unnecessary should be excluded from a fee request). These reductions total 29.5 hours, resulting in a revised total of 42 hours for the conferral work.

Concerning the drafting work, First Mercury points out that Mr. Carroll seems to have had no prior involvement in this case, but became the fourth lawyer involved in the drafting work and billed for his time getting up to speed on the case. Wonderland explains Mr. Carroll is an "excellent writer" who was brought in to assist when the press of other business in this case monopolized the primary attorneys' time.

The Court finds the proper exercise of billing judgment warrants a reduction in Mr. Carroll's time acquainting himself with the case, to include some of Ms. Yates associated time getting him up to speed. Again, the block billing is unhelpful to parsing out that time. Nevertheless, the Court identifies that time by the following entries: (1) Carroll 12/02/20 entry of 1.25 hours; (2) Yates 12/02/20 entry of 2 hours; (3) Carroll 12/03/20 entry of 3.75 hours; (4) Yates 12/03/20 entry of 1.00 hour; (5) Carroll 12/04/20 entry of 4.50 hours; and (6) 1.00 hour from the 4.00-hour entry by Carroll on 12/06/20. The Court makes the following additional reductions for work that is redundant of other work, excessive, or otherwise unnecessary: (1) Robin 12/10/20 entry of 0.5 hours; (2) Robin 12/11/20 entry of 1.25 hours; (3) Yates 12/11/20 entry of 1.00 hour; and (4) Robin 1/11/21 entry of 0.5 hours. These reductions total 16.75 hours, resulting in a revised total of 55.5 hours for the drafting work.

### 2.      Reasonable Rate

"[T]he second half of calculating an appropriate fee award is multiplying the hours by a reasonable rate." *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996). A reasonable rate is defined as "the prevailing market rate in the relevant community for an attorney of similar experience." *BIAX Corp. v. NVIDIA Corp.*, No. 09-cv-01257-PAB-MEH, 2013 WL 4051908, at *6 (D. Colo. Aug. 12, 2013). The movant bears the burden of establishing the rates are reasonable. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). A reasonable rate generally depends on "what lawyers of comparable skill and experience practicing in the area

[and community] in which the litigation occurs would charge for their time." *Ramos*, 713 F.2d at 555.

Relying on recent decisions in this District and the 2017 Economics of Law Survey prepared by the Colorado Bar Association (CBA Survey) [#93-1], First Mercury argues a reasonable hourly rate for an experienced lawyer in Denver is in the range of $300, and for an associate something closer to $200. Wonderland, on the other hand, relies on the 2019, 47th Annual Survey of Law Firm Economics prepared by ALM Intelligence and The National Law Journal (NLJ Survey) [#94-1], to argue the hourly rates in the fee request—$700 (Mosley); $595 (Yates); $545 (Carroll); and $365 (Robin)[2]—are reasonable.

Notably, while advocating for the CBA Survey here, the Treece Alfrey Musat law firm (First Mercury's local counsel) argued in a December 22, 2020 appellate brief in the Colorado Court of Appeals that the

> . . . CBA Survey is flawed in several disqualifying ways. The survey response rate was a paltry and unreliable 6.7% . . . , and a plurality of participants were "solo practitioners," unlike the firms at issue here . . . .. The survey provides no way to account for the fact that "some attorneys are able to regularly command even higher rates in certain circumstances (*i.e.* those with unique skills in specialized practice area)[.]"

---

[2] These are 2021 hourly rates. They differed in 2020 as follows: $680 (Mosley); $575 (Yates); and $345 (Robin). Carroll's hourly rate did not differ in 2020. As explained in more detail in Mr. Mosley's supporting affidavit [#88-1], Mr. Mosley is a member of Sherman & Howard with over 29 years of experience focusing almost exclusively on representing commercial policyholders in insurance coverage matters. Mr. Carroll is a member of the firm with over 31 years of experience; Ms. Yates is a member with over 14 years of experience; and Mr. Robin is an associate with just over one year of experience.

[94-2, p.32 (citations omitted).] Citing cases, Treece Alfrey Musat added the "above flaws in the CBA Survey have been stressed by Colorado federal judges in rejecting it as non-probative." [*Id.* at p.33.] Finally, arguing it was appropriate for the trial court to rely on the NLJ Survey, Treece Alfrey Musat asserted rates of $650 for senior partners, and $375 for associates, was reasonable for work performed in 2018 and 2019 in the Denver market. [*Id.* at pp.35-38.]

Under the circumstances of this case, including the arguable flaws in the CBA Survey noted by counsel for both sides, the Court finds the NLJ Survey is more reflective of hourly rates for large Denver law firms like Wonderland's counsel. The NLJ Survey indicates as of January 1, 2019, equity partners in the Mountain region in the ninth decile of survey respondents charged $650 as their billable hourly rate; the upper quartile of equity partners at firms of over 150 lawyers bills $685 per hour, and the ninth decile bills $775. These hourly rates are generally consistent with rates awarded in this District in complex litigation matters. *See Snyder v. ACORD Corp.*, No. 1:14-cv-01736-JLK, 2019 WL 319407, at *8 (D. Colo. Jan. 24, 2019) (in January 2019, finding $625 hourly rate for experienced partners and $425 for associates reasonable), *aff'd*, 811 F. App'x. 447 (10th Cir. 2020); *see also BIAX Corp.*, 2013 WL 4051908, at *6 (in 2013, finding fees from $637.50 - $739.50 for partners, and from $454.74 - $531.25 for associates, reasonable). These rates are also consistent with those sought by the Treece Alfrey Musat law firm in the appellate matter referenced above.

12

Considering the NLJ Survey data, decisions from this District, and based on the undersigned's combined over 20 years of law practice and judicial experience, the Court finds the hourly rates sought by defense counsel are reasonable for lawyers of comparable skill and experience practicing in this District.

### 3.    The Lodestar Amount

Based on the Court's reductions to the hours expended on the conferral and drafting work (as specified above), and its conclusion the hourly rates sought are reasonable, the Court calculates the lodestar amount as follows[3]:

| The Work | Reasonable Hours | Reasonable Fee |
|---|---|---|
| Conferral Work | 42.00 hours | $21,858.75 |
| Drafting Work | 55.50 hours | $31,441.25 |
| Hearing[4] | 15.50 hours | $10,347.50 |
| **TOTAL** | **113.00 hours** | **$63,647.50** |

But because the fee award pertains to a discovery motion, as compared to a motion on the merits, the Court determines a further reduction is warranted. Also, First Mercury argues the motion to compel "is largely a reworking of the Conferral

---

[3] The Court arrived at these hour and fee amounts simply by striking the above-referenced hours and fees from the billing statements attached to Mr. Mosely's Affidavit as Attachments A and B. [*See* #88-1, pp. 7-12.]

[4] First Mercury disputes neither the hours nor the fees associated with the hearing on the motion to compel.

Letter with a few more legal citations and invectives against First Mercury thrown in. It is inconceivable that it would take several highly qualified lawyers almost two full weeks of billable time to transform the Conferral Letter into the Motion to Compel." It adds: "It should have been a simple task to transfer the letter into a motion."

This is a compelling argument with which the Court agrees. And Wonderland did not address this argument in its Reply. For these reasons, the Court makes a further 20% reduction in the above-amounts for the conferral and drafting work— above-totaling $53,300.00—reducing the total fees for those two categories of work to $42,640.00. *See, e.g., Casias v. Raytheon Co.*, No. 17-cv-02635-REB-SKC, 2021 WL 2345604, at *5 (D. Colo. June 2, 2021) (making various reductions to the calculated lodestar); *Layton v. Bd. of Cty. Com'ns of Oklahoma Cty.*, No. CIV-09-1208-C, 2014 WL 584746, at *6 (W.D. Okla. Feb. 12, 2014) ("Considering the amount of the jury award the Court finds an additional reduction [to the lodestar] of 20% is necessary to bring the fee to a reasonable amount."); *Browder v. City of Moab*, No. 2:99-CV-807 BSJ, 2008 WL 687526, at *14 (D. Utah Mar. 12, 2008) (further reducing the lodestar based on the degree of success compared to the scope of the litigation as a whole); *Okla. Nat. Gas Co. v. Apache Corp.*, 355 F. Supp. 2d 1246, 1260 (N.D. Okla. 2004) (further reducing the lodestar due to block billing). This reduction brings the total fee award to $52,987.50 when including the undisputed portion for the hearing.

*       *       *

14

Based on the above, it is ORDERED that Wonderland is awarded reasonable attorney fees in the amount of $52,987.50 based on the expenses previously granted by Judge Kane for Wonderland having prevailed on its motion to compel. In reaching this decision the Court has considered (in addition to the above) the results obtained—Wonderland prevailed on its motion to compel securing an order requiring First Mercury to supplement responses to 23 of 24 discovery requests; the complexity of this case balanced by the fee award resulting from a discovery motion; and the parties' respective culpability leading to the motion to compel based on their open contentiousness evident throughout the record.

DATED: July 22, 2021

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge